THOMAS CANARY AND GEORGE W. LEDERER *v.* LILLIAN RUSSELL.

(Supreme Court—Kings Special Term, August, 1894.)

A covenant in a contract of employment of an actor or actress for two successive theatrical seasons, each commencing in the fall and ending the following June, that he or she will not perform under other management during the continuance of the contract, does not restrain him or her from performing under other management during the summer months.

Representations made by the managers, which did not constitute material inducements to enter into the contract, cannot be urged as a defense for a breach thereof by the actor or actress.

The court has jurisdiction, in a proper case, to enforce by injunction an agreement by an actor or actress not to perform for rival managers.

Motion to continue a preliminary injunction, granted by Hon. William J. Gaynor, restraining Lillian Russell from singing, playing, performing, dancing, or in any way or manner exercising her talents upon any stage, or with any organization, or for herself, or any person or persons or company, or in any operatic entertainment, under any management other than plaintiffs.

*Ira Leo Bamberger*, for plaintiffs.

*Olin, Rives & Montgomery*, for defendant.

Bartlett, J. The preliminary injunction in this case should be modified so as not to restrain the defendant from singing and playing up to the first of October next, but should be *continued in full force and effect* from that date during the pendency of the action.

The reason why the injunction should be modified is, that the provision in the contract whereby the defendant undertakes not to perform for any other persons than the plaintiffs, without their written consent, seems to apply only to the two separate dramatic seasons which are specified in the agreement, and not to the summer interval between those seasons.

The contract provides, in the first place, for a season commencing on or about the 20th day of November, 1893, and continuing until on or about June 1, 1894. Then it provides for a privilege of renewal for a season beginning about October 1, 1894, and terminating about June 1, 1895, for the same terms and conditions as the present contract. The negative covenant is in these words : " *It is further understood and agreed that during the continuance of this agreement said party of the second part will not perform or give any exhibition of her talents at any place or for any persons*

*other than the said parties of the first part, without their consent in writing first had and obtained.*"

In behalf of the plaintiffs it is urged that the clause " *during the continuance of this agreement*" is broad enough to prevent the defendant from giving any performance whatever during the summer months without their permission. It seems to me, however, that this is too restricted an interpretation of the language, and that the fair meaning of the parties was that during each season in which Miss Russell was bound to serve Canary and Lederer she would not, without their consent, sing or play for any one else.

The more important question, however, which is presented by the motion to continue the preliminary injunction herein is whether the plaintiffs are entitled to restrain the defendant, under this negative covenant, for the period of the second season contemplated by the contract, that is to say, from the 1st of October to the first of June next.

In considering that question we find :

*First.* A contract between the parties for one season, with the privilege of renewal for a second season on giving written notice.

*Second.* Performance by the defendant under that contract for the first season.

*Third.* The receipt by her of upwards of $27,000.

*Fourth.* The giving of the prescribed notice entitling the plaintiffs to a second season ; and

*Fifth.* Declaration by the defendant to the effect that she will not sing for plaintiffs during a second season.

The defendant seeks to justify her course in such refusal by urging :

*First.* False representations on the part of Lederer which induced her to enter into the contract, these representations being that Lederer was a partner with Canary, and that Lederer and Canary owned the lease of the theater known as the Casino, in New York.

*Second.* Breach of the contract, in that Lederer did not always accompany the troupe and devote his *entire* time and

attention thereto ; that he *in some way assigned*, transferred and let out his interest in the contract; and that the plaintiffs have been unable to secure a renewal of the lease of the Casino, and have not secured any other theater or requested the defendant to select one.

The proofs before me do not sustain the position of the defendant on any of these points.    I have great doubt whether the alleged representations were, in fact, made by Lederer; but, if they were, it is difficult to see how they can have constituted material inducements to enter into the agreement, or how their falsity has injured the defendant.    The last article of the contract ought to have been notice to her that there was no partnership.    It could not be a matter of any consequence whether Lederer owned the lease of the Casino in conjunction with Canary, so long as Canary was in a position to control it, as he appears to have been.    The failure of Lederer to accompany the troupe seems to have occurred on one occasion only, when he was ill.    The notion that he had in some way transferred his interest in the contract appears to be based wholly on statements which he made in supplementary proceedings in the City Court of New York.    These were undoubtedly careless, and perhaps they might be more harshly criticised without injustice; but in view of the other evidence in the case, *they afford no basis for the conclusion, as matter of fact, that Lederer had made any such transfer or assignment as is alleged.*    The inability of the plaintiffs to secure a renewal of the lease of the Casino, and the fact that they have not secured any other theater and have not requested the defendant to choose any other are referred to in the answer as reasons why she should be allowed to refuse further fulfillment of the contract.    Mr. Canary, however, swears that he now has a lease of the Casino from the receivers, which will last until November 20, 1894.    As to the neglect to procure any other theater, under the 19th article of the contract, it will be time enough for the defendant to complain on that ground *when she evinces a willingness to fulfill the agreement on her part.*

71

New York Common Pleas, September, 1894.          [Vol. 9.

The jurisdiction of the court, in the case of an actor or actress, to grant an injunction for the enforcement of an agreement not to perform for rival managers, is now too well established to require the citation of authorities to support it. It is, nevertheless, true that a restraining order òf this sort, *before there has been a full inquiry into the facts by means of a trial,* should be made only where the case in favor of the complainant, upon the proofs presented to the court, is reasonably free from doubt. *It seems to me that this is just such a case.* The impression made upon my mind by a careful reading of all these affidavits is that the defendant *has been seeking some plausible pretext to avoid the fulfillment of a contract which has been substantially performed in good faith on the part of the plaintiffs.*

The injunction will be modified to the extent already indicated, and as thus modified will be *continued during the pendency of the action;* costs to abide event.

Ordered accordingly.